JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| ANTONIO FERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>HEKMATRAVAN FAMILY NORWALK, LLC; LEVIAN FAMILY NORWALK, LLC; GOLIN THEATRES, INC.; and DOES 1–10,<br><br>Defendants. | Case No.: CV 19-02156-CJC(GJSx)<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 25], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. 26], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S STATE LAW CLAIMS |

## I. INTRODUCTION

Plaintiff Antonio Fernandez brings this action under the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act ("Unruh Act") against Defendants Hekmatravan Family Norwalk LLC, Levian Family Norwalk LLC, Golin Theatres, Inc., and unnamed Does.  (Dkt. 1 [Complaint, hereinafter "Compl."].)

Before the Court are the parties' cross motions for summary judgment.  (Dkt. 25-1 [Memorandum in Support of Defendants' Motion, hereinafter "D. Mot."]; Dkt. 26-1 [Memorandum in Support of Plaintiff's Motion, hereinafter "P. Mot."].)  For the following reasons, Plaintiff's motion is **DENIED**, and Defendants' motion is **GRANTED** as to Plaintiff's ADA claim.  Because the Court resolves Plaintiff's sole federal claim in favor of Defendants, it will not exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.  Accordingly, this claim is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff to assert it in state court.[1]

## II. BACKGROUND

Plaintiff is paralyzed from the waist down and uses a wheelchair for mobility. (Dkt. 29-12 [Defendants' Response to Plaintiff's Statement of Uncontroverted Facts, hereinafter "SUF"] ¶ 1.)  Defendants own and operate The Regency Theatres, a movie theater in Norwalk, California ("the Theater").  (*Id.* ¶¶ 3–6.)  Plaintiff declares that he visited the Theater on February 22, 2019 to see a movie with a friend.  (Dkt. 26-4 [Declaration of Antonio Fernandez, hereinafter "Fernandez Decl."] ¶ 4.)  When he went to the concession stand to buy snacks and drinks, Plaintiff claims that he could not find a wheelchair-accessible sales counter, which must be thirty-six inches above the ground. (*Id.* ¶¶ 5–6.)  He saw a lowered portion of the sales counter, but "it did not appear to be used to help customers because there was a soda machine placed on top and obstructing most of the counter."  (*Id.* ¶ 5.)  Plaintiff also encountered issues with the Theater's restrooms.  Specifically, the Complaint alleges that the toilet in the accessible bathroom stall was too high for him to use.  (*See id.* ¶¶ 8–9; Compl. ¶ 13, n.1.)  Plaintiff explains that these issues caused embarrassment, difficulty, and discomfort.  (*Id.* ¶¶ 7, 10.)

---

[1] Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearings set for August 17, 2020 at 1:30 p.m. are hereby vacated and off calendar.

On March 22, 2019, Plaintiff filed this action, asserting one claim for injunctive relief under the ADA and one claim for actual and statutory damages under the Unruh Act. (Compl.)  In the Complaint, Plaintiff alleges that the Theater does not provide an "accessible restroom" or "accessible sales counters" in violation of the ADA and Unruh Act. (*Id.* ¶¶ 12–16.)  He asserts that this Court has federal question jurisdiction over his ADA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over his Unruh Act claim, 28 U.S.C. § 1367. (*Id.* ¶¶ 7–9.)  Since Plaintiff initiated this action, Defendants adjusted the toilet seat height. (Dkt. 25-8 [Declaration of Tony Tsuruda, hereinafter "Tsuruda Decl."] ¶ 3.)  The Theater is currently closed due to COVID-19 restrictions, with no immediate plans for reopening. (*Id.* ¶ 4.)

## III.  LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.*

Where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element

of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B).

## IV. ANALYSIS

Defendants challenge Plaintiff's ADA claim on several grounds. First, they argue that his cluttered sales counter theory fails as a matter of law. Second, they contend that his ADA claim has been rendered moot by subsequent modifications. Finally, they argue that Plaintiff cannot premise his ADA claim on barriers that are not identified in the Complaint. The Court agrees on all three points and grants Defendants' motion as to Plaintiff's ADA claim. Having resolved Plaintiff's sole federal claim for Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

### A. ADA Claim

Congress enacted the ADA to ensure that businesses do not discriminate against the disabled either through "invidious animus" or through "thoughtlessness and indifference" and "benign neglect." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944–45 (9th Cir. 2011). Accordingly, the ADA proscribes not only "obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome

or an obstacle course leading to a store's entrance"—but also "subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Id.* at 945.

More specifically, the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities . . . or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Discrimination" under the ADA occurs if the features of a store deny an individual the opportunity to "benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity" because of the individual's disability. 42 U.S.C. § 12182(b)(1)(A)(i). This includes "a failure to remove architectural barriers . . . where such removal is readily available." *Id.* § 12182(b)(2)(A)(iv). The ADA Accessibility Guidelines ("ADAAG") adopted by the U.S. Department of Justice set out the minimum requirements for compliance with the ADA's prohibition on architectural barriers. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004); 2010 ADA Standards for Accessible Design § 101.1 (2010 ed.) [hereinafter "ADAAG"].

To prevail on an ADA claim alleging discrimination for failure to remove architectural barriers, a plaintiff must show that (1) he is disabled, (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) the plaintiff was denied public accommodations because of his disability and by the defendant's failure to remove architectural barriers. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). In this case, Defendants do not dispute that Plaintiff is disabled or that Defendants own, lease, and operate a place of public accommodation. Instead, the issue is whether Plaintiff has identified actionable barriers and, if so, whether he has standing to challenge them.

1. <u>Cluttered Counter Claim</u>

Plaintiff contends that the Theater's lowered sales counter violates the ADA because its width ranges from thirty inches to forty-one inches due to the placement of the soda machine. (*See* P. Mot. at 9–10; SUF ¶ 19.) According to Plaintiff, the ADAAG requires thirty-six inches of clear counter space. This theory fails as a matter of law.

Section 904.4 of the ADA guidelines requires that a store provide "[a] portion of the [sales] counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor." ADAAG § 904.4. As this Court, the Ninth Circuit, and other district courts have repeatedly held, using a portion of a sales counter to display products—even a "significant portion"—does not violate this requirement because the ADAAG does not require a specific amount of clear counter space. *See Whitaker v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 108356, at *9 (C.D. Cal. Jan. 17, 2020); *Kong v. Mana Inv. Co., LLC*, 2019 WL 3220027 (C.D. Cal. May 1, 2019) ("Nothing in the plain language of § 904.4.1 or its exception suggests that any particular amount of 'clear' space on the surface of a sales or service [counter] is required."), *aff'd* 2020 WL 3265179 (9th Cir. June 17, 2020); *Lindsay v. Starbucks Corp.*, 2020 WL 3265180 (9th Cir. June 17, 2020) (holding that "Starbucks does not violate Section 904.4.1 by failing to provide 36 inches of usable counter space for disabled customers"); *Johnson v. Starbucks Corp.*, 2019 U.S. Dist. LEXIS 54676, 2019 WL 1427435, at *3 (N.D. Cal. Mar. 29, 2019), *aff'd* 2020 U.S. App. LEXIS 19066, at *3 (9th Cir. June 17, 2020) (same); *Whitaker v. ELC Beauty LLC*, 2019 WL 4690202, at *2 (C.D. Cal. Sept. 25, 2019) (finding that "the lack of clear space or the placement of merchandise on transaction counters violates neither the 2010 Standards nor the ADA"). As this Court explained in *Whitaker v. Starbucks Corp.*, both the plain language of the ADAAG and the Department of Justice's interpretation of the relevant regulations compel this conclusion. 2020 U.S. Dist. LEXIS 108356, at *5–9.

Nor does 28 C.F.R. § 36.211(a)—which requires businesses to maintain accessible features "in operable working condition"—change the analysis. "It is axiomatic that defendant's obligation to 'maintain' the accessibility of its facilities does not impose greater obligations than those obligations imposed by the ADAAG in the first instance." *Johnson*, 2019 U.S. Dist. LEXIS 54676, at *3. Because the ADAAG does not require a specific amount of clear counter space, Defendants' obligation to maintain their facilities in operable working condition does not create such a requirement. *See Whitaker*, 2020 U.S. Dist. LEXIS 108356, at *9. Plaintiff's expert found that, as built, the accessible sales counter is properly sized. (Dkt. 26-9 [SCW Architects Access Compliance Evaluation Survey and Report, hereinafter "SCW Report"] at 5.) The expert also found that—even with the placement of the soda machine—there is at least thirty inches of clear space at the accessible counter. (*Id.*) Plaintiff therefore does not—and cannot—argue that the soda machine renders the counter "inoperable." *See Whitaker*, 2020 U.S. Dist. LEXIS 108356, at *9 ("As several courts in this circuit have explained, displaying merchandise on a sales counter does not render it inoperable."). Accordingly, to the extent Plaintiff's ADA claim challenges the amount of clear counter space at the accessible sales counter, it fails as a matter of law.

### 2. Plaintiff Lacks Standing to Pursue His Remaining ADA Theories

Defendants argue that they have cured any actionable barriers identified in the Complaint and therefore Plaintiff lacks standing to assert an ADA claim. The Court agrees. The party invoking federal jurisdiction bears the burden of establishing standing under Article III of the Constitution. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy Article III's standing requirement, "a plaintiff must show (1) that [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Standing must be shown to support each form of relief requested. *See id.* at 185. At the summary judgment stage, a party invoking jurisdiction cannot rest on "mere allegations" but must "set forth by affidavit or other evidence specific facts" that establish standing. *Lujan*, 504 U.S. at 561.

Plaintiff cannot satisfy the third element of standing—a likelihood that his injury will be redressed by a favorable decision. Injunctive relief is the only remedy available in private actions for violations of Title III of the ADA. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III."). To establish redressability in an action for injunctive relief, a plaintiff must "demonstrate a sufficient likelihood that he will again be wronged in a similar way." *Chapman*, 631 F.3d at 948. "That is, he must establish a real and immediate threat of repeated injury." *Id.* (quotation omitted). Plaintiff fails to establish such a threat.

In his Complaint, Plaintiff seeks injunctive relief "compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act." (*See* Compl. at 7 [Prayer for Relief].) As discussed below, he can only seek relief for architectural barriers identified in the Complaint. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908–09 (9th Cir. 2011). The Complaint identifies two barriers at the Theater—the height of the toilet and the failure to provide an accessible sales counters. (Compl. ¶ 13, n.1 [toilet height], ¶ 16 [sales counters].) Any actionable problems with these two features have been cured.

While this action was pending, Defendants modified the height of the toilet in the accessible bathroom stall. (Tsuruda Decl. ¶ 3.) The toilet seat is now between 17 inches

and 19 inches above the floor, as required by § 604.4 of the ADAAG. (*See id.*) Plaintiff concedes that, as modified, the toilet satisfies the ADAAG's height requirement. (*See* Dkt. 30 at 12; Dkt. 30-1 ¶ 3.) Accordingly, he cannot show "a real and immediate threat of repeated injury" based on the height of the toilet. *See Chapman*, 631 F.3d at 948. Plaintiff therefore cannot establish standing to pursue this claim, and the Court lacks jurisdiction to adjudicate it. *See id.*; *Lujan*, 504 U.S. at 561.

Plaintiff also seeks injunctive relief to address the Theater's sales counters. To the extent Plaintiff challenges the amount of clear space on the accessible counter, this claim fails for the reasons explained above. However, in his opposition to Defendants' motion, Plaintiff identifies a second problem with the Theater's accessible sales counter. (Dkt. 30 [hereinafter "P. Opp."] at 5–6.) In addition to being too narrow, he now contends that there is no cash register at the accessible counter and therefore it does not "provide an equivalent level of service as that provided to all customers." (*Id.* at 5 [quoting 28 C.F.R. Pt. 36, App. B].) Photos submitted by both parties appear to confirm that, at the outset of this litigation, there was no cash register on the accessible sales counter. (*See* SCW Report at 13; Tsuruda Decl. Ex. A.) However, the Theater's manager testifies that "[a]ll services (place order, pay for merchandize, pick up etc.) are offered at the lowered accessible sales counter." (Dkt. 32-1 [Supplemental Declaration of Tony Tsuruda, hereinafter "Tsuruda Supp. Decl."] ¶ 2.) He also testifies that there is currently a cash register at the accessible sales counter, (*id.*), and Defendants have submitted a photograph showing its placement, (Dkt. 32-2).

As an initial matter, the Court is skeptical that the placement of the cash register, standing alone, supports an ADA claim. The relevant Advisory to the ADAAG explains that "[t]he accessible part of the [sales] counter must also be staffed and provide an equivalent level of service as that provided to all customers." 28 C.F.R. Pt. 36, App. B. The parties agree that, as applied here, a customer must be able to order, pay, and receive

concessions at the accessible counter.  (*See* P. Opp. at 5; Dkt. 32 [Defendants' Reply] at 3.)  The Court fails to understand why this would require any specific placement of the cash register.  Theater staff could presumably receive payments and make change at the accessible counter, even if they had to move back and forth to a nearby register.  Notably, Plaintiff never attempted to receive service at the accessible sales counter.  (Fernandez Decl. ¶ 5 [explaining that the lowered portion of the sales counter "did not appear to be used to help customers" because of the placement of the soda machine].)  Aside from the placement of the soda machine and cash register, he has not presented any evidence that the Theater failed to provide "equivalent service" at the lowered counter.  *See* 28 C.F.R. Pt. 36, App. B.

In any event, Plaintiff lacks standing to proceed under this theory.  Even assuming Defendants' placement of the cash register created a barrier, it has since been cured.  (*See* Tsuruda Supp. Decl. ¶ 2; Dkt. 32-2.)  Plaintiff therefore cannot show "a real and immediate threat of repeated injury" based on the placement of the cash register.  *See Chapman*, 631 F.3d at 948.  Accordingly, he lacks standing to pursue this claim, and the Court cannot adjudicate it.  *See id.*; *Lujan*, 504 U.S. at 561.

### 3. Barriers Not Identified in the Complaint

In his opposition, Plaintiff identifies several architectural barriers in the Theater's restroom that are not referenced in the Complaint.  Specifically, he alleges problems with the paper towel dispensers, toilet paper dispensers, floor mats, toilet compartments, and coat hangers.  (P. Opp. at 12–15; *see* SCW Report.)  The parties dispute whether Defendants received fair notice that these alleged barriers would be at issue.  Defendants argue that, under Federal Rule of Civil Procedure 8, Plaintiff can only seek relief for the two barriers identified in his Complaint.  The Court agrees.

Under Rule 8, a civil complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Oliver v. Ralphs Grocery Co.*, the Ninth Circuit explained that, in an ADA architectural barriers case, "the relevant 'grounds' are the allegedly non-compliant architectural features at the facility." 654 F.3d at 908 (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)). Therefore, "in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint." *Id.* "In general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." *Id.* at 909.

Here, the only architectural features identified in the Complaint are the Theater's sales counters and toilet. (Compl. ¶¶ 5–6, 13, n.1.) To be sure, the Complaint broadly alleges that Defendants "did not provide an accessible restroom in conformance with the ADA standards." (Compl. ¶ 13.) It identifies the height of the toilet as one "example" of the problems with the restroom and alleges "[o]n information and belief there are other issues in the restroom that render it non-compliant." (*Id.* ¶ 13, n.1.) The Complaint promises that "[t]hose issues will be fleshed out in discovery and inspections" and explains that "[t]he plaintiff seeks to have a fully compliant restroom." (*Id.*) This generalized and speculative pleading does not provide fair notice.

*Oliver* demands that a complaint identify "the allegedly non-compliant architectural features." 654 F.3d at 908. Both the Ninth Circuit and the ADAAG use the term "feature" to refer to specific, functional elements of a building's design—*e.g.*, showers, elevators, guard rails, and pathways. *See Oliver*, 654 F.3d at 905 n.5

(identifying a stall door, a grab bar, and a toilet paper dispenser as "architectural features"); ADAAG § 806.2 (listing the "mobility features" required in certain hotel rooms).  A "compliant restroom" is not an "architectural feature."  *See Oliver*, 654 F.3d at 908; (Compl. ¶ 13).  Instead, a restroom is part of a facility that *has* certain features.  *See* ADAAG § 106.5 (defining "facility" and "element").  For reference, the ADAAG requirements for bathrooms in public accommodations is more than twenty pages long, and includes dozens of rules for individual features, including toilets, urinals, toilet paper dispensers, paper towel dispensers, grab bars, sinks, baths, and showers.  *See* ADAAG §§ 603.1–610.4.  Plaintiff's vague allegation that the restroom did not comply with the ADA guidelines left Defendants to guess what features were at issue.  It is akin to alleging that the "screening room" of a movie theater is noncompliant.  *Oliver* demands more specificity.  *See* 654 F.3d at 908–09.[2]  Plaintiff had knowledge of the specific features that he encountered in the restroom.  (*See* Fernandez Decl. ¶¶ 8–9 [describing issues with the toilet and paper towel dispenser].)  But the only feature identified in the Complaint is the toilet and sales counter.  Under *Oliver*, Plaintiff's ADA claim is limited to the barriers identified in the Complaint.  654 F.3d at 908–09.

Plaintiff argues that a pre-*Oliver* Ninth Circuit decision, *Skaff v. Meridien North America Beverly Hills, LLC*, allows general allegations of noncompliance.  *See* 506 F.3d 832 (9th Cir. 2007).  The Court disagrees.  The question in *Skaff* was whether the plaintiff adequately alleged standing at the pleading stage.  *See id.* at 838.  In *Oliver*, as in the case at hand, the issue was whether—at the summary judgment stage—the plaintiff could seek relief based on barriers that were not identified in the pleadings.  *See* 654 F.3d at 908–09.  The Ninth Circuit found that he could not.  Its decision in *Oliver* is controlling here.[3]  *See*

---

[2] The Court's application of *Oliver* does not impose a heightened pleading standard on ADA plaintiffs, but is premised on generally applicable principles of fair notice.  If a complaint fails to identify specific features that allegedly violate the ADAAG, a business cannot assess its liability or respond.  *See Oliver*, 654 F.3d at 908 (citing *Twombly*, 550 U.S. at 555).

[3] The Court also notes the risk of litigants withholding information in bad faith.  In *Oliver*, plaintiff's counsel admitted that he uses such a strategy and "forces the defense to wait until expert disclosures (or

*Moeller v. Taco Bell Corp.*, 966 F. Supp. 2d 899, 904 (N.D. Cal. 2013) (citing *Oliver* and concluding that "to the extent that the FAC does not identify specific barriers encountered by specific plaintiffs at specific stores, those claims are not presently in the case").

Ultimately, the only barriers at issue are those identified in the Complaint, and neither can support Plaintiff's ADA claim. Plaintiff's cluttered sales counter theory fails as a matter of law, and he lacks standing to challenge the—now cured—toilet height and cash register placement. Accordingly, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED** as to Plaintiff's ADA claim.

### B.  Supplemental Jurisdiction Over Plaintiff's Unruh Act Claim

Under 28 U.S.C. § 1367(c), a district court has discretion to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." "In order to decide whether to exercise jurisdiction over pendent state law claims, a district court should consider . . . the values of judicial economy, convenience, fairness, and comity." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990) (internal quotation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

This is one such "usual case." *See id.* Plaintiff has achieved some success on his sole federal claim. After he filed this lawsuit, Defendants modified the toilet to comply

---

discovery) before revealing a complete list of barriers," because "otherwise a defendant could remove all the barriers prior to trial and moot the entire case." *Oliver*, 654 F.3d at 906 n.7.

with the ADAAG and seem to have placed a cash register at the accessible sales counter. (*See* Tsuruda Decl.; Tsuruda Supp. Decl.) This is precisely the relief Plaintiff might have expected from litigating his ADA claim. His remaining state law claim involves a unique feature of California law. Unlike the ADA, the Unruh Act permits both injunctive relief and monetary damages. A plaintiff may recover actual damages for each offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a). Although the substantive protections of the Unruh Act mirror the ADA, damages must be assessed according to California law. *See id.* §§ 51(f), 52(a). Considerations of comity suggest that a California court is better situated to assess what damages, if any, should be awarded to Plaintiff. *See Nishimoto*, 903 F.2d at 715.

The remaining factors—judicial economy, convenience, and fairness—do not change the Court's assessment. *See id.* California courts impose various procedural requirements on construction-related accessibility actions. *See* Cal. Civ. Proc. Code § 425.50; *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017). Accordingly, Plaintiff would prefer to litigate in federal court, and Defendants prefer state court. Having dismissed Plaintiff's sole federal claim, it does not seem unfair to require Plaintiff to litigate his state law claim in state court. *See Nishimoto*, 903 F.2d at 715. Although the parties have apparently engaged in some discovery, this is not a complicated case. Any concerns about judicial economy and convenience are modest. If Plaintiff's Unruh Act claim must go to trial, it may well be faster for the parties to proceed in state court.

"[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ.*, 484 U.S. at 350. For the reasons set out above, the Court declines to exercise supplemental

jurisdiction over Plaintiff's Unruh Act claim. Accordingly, this claim is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff to assert it in state court. Plaintiff and Defendant's motions for summary judgment on this claim are therefore **DENIED AS MOOT**.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED IN PART** as to Plaintiff's ADA claim. Both motions are **DENIED AS MOOT** with respect to Plaintiff's Unruh Act claim. This claim is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff to assert it in state court. Having resolved both of Plaintiff's claims, this action is **DISMISSED**.

DATED:   August 6, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE